IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | FILED | Civil Action No: MDL 875 |
| This Document Relates to: DOYLE v. A.C. AND S., INC. as well as the other cases on the attached list | DEC 27 2012 MICHAEL E. KUNZ, Clerk By_____ Dep. Clerk | E.D. Pa. No: 08-89845 |

## MEMORANDUM

DAVID R. STRAWBRIDGE, USMJ                                     December 27, 2012

       Presently before this Court is "Certain Defendants' Motion to Bar Those Witnesses Included in the Cascino Vaughan Law Offices' ('CVLO') 'Site Workers by Job Sites for IL & WI Job Sites' and 'Site Worker Past Testimony by Jobsite for IL & WI Job Sites,' Where Witnesses Have Not Been Otherwise Properly Disclosed Against Defendants for Cases Included in CVLO 3, and All Supplements to the Same" (e.g. Doyle v. A.C. and S., Inc, et al., 08-89845, Doc. 162).[1] For the reasons provided in this memorandum, the motion will be granted.

## I.     FACTUAL AND PROCEDURAL HISTORY

       This motion arises out of the discovery proceedings in some of the approximately 192 remaining asbestos related cases transferred to MDL-875 where Plaintiffs are represented by CVLO. On May 4, 2009, the Honorable Eduardo C. Robreno referred the approximately 5,000 CVLO MDL-875 cases to the Honorable Lowell A. Reed, Jr. for mediation. Judge Reed, *inter alia*, approved a set of standard interrogatories and deemed them served in each individual case as of October 1, 2010. Judge Reed then ordered CVLO to "answer each of the interrogatories and serve answers upon the

---

[1] The CVLO 3 case group currently contains 28 cases set out on the attached case list.

Mediator and all defendants herein no later than February 21, 2011."[2] Anticipating Judge Reed's retirement, the cases were referred to us to continue the mediation proceedings on April 18, 2011. On June 9, 2011, Judge Robreno removed the cases from mediation and amended the referral order to authorize us to "conduct pretrial procedures, supervision of discovery, settlement conferences, and preparation for trial." See e.g. (Ahnert v. CBS Corp., 10-67443 Doc. 34). We began placing these cases on scheduling orders on July 15, 2011. We thereafter amended the scheduling orders several times at the parties' requests, culminating in the current scheduling orders entered on April 11, 2012. Fact and expert discovery has now closed in all cases.

On June 12, 2012, CVLO served on all defense counsel two lists, together amounting to 719 pages which were said to be applicable to all CVLO MDL-875 cases and which purportedly contained:

> CVLO's attorney knowledge to supplement the responses to all CVLO MDL plaintiff's standard interrogatories, particularly No. 16-18, 20 and 29. The lists identify 1) Site Workers by Job Site for IL & WI Job sites which list persons who worked at the same site as the injured persons and 2) Site Worker Witness Past Testimony by Job Site for IL and WI Job sites which lists past testimony for those job sites.

See (Doyle, 08-89845, Doc. 162 Ex. B)[3] (the "lists"). Specifically, the lists provide, in the form

---

[2] http://www.paed.uscourts.gov/mdl875r.asp, 11/15/2010 entry.

[3] Interrogatory 16 provides: Identify in chronological order every employer for whom you have ever worked in the last 40 years. State separately for each such employer: (a) the employer's name and address; (b) the nature of the employer's business; (c) the nature and ending dates of your employment including all periods of employment for that employer; (d) your position and responsibilities; (e) your rate of pay.
Interrogatory 17 provides: For each of the employers identified in Interrogatory No. 16, identify each and every job site at which you claim to have worked with or around asbestos-containing products.
Interrogatory 18 provides: For each of the job sites identified in Interrogatory No. 17,
(continued...)

of a chart, the (1) names and addresses of all "site-workers" at certain broadly described job sites where we are to understand certain CVLO plaintiffs may have worked, noting whether each individual is represented by CVLO; and (2) the identity of all relevant transcripts by job site, providing the deponent's name, the date of the testimony, whether the deponent is represented by CVLO, and in some cases, the name and case number for which the testimony was taken.

The Defendants moved to strike these lists on June 27, 2012. (Id., Doc. 98). On July 17, 2012, we denied their motion, but made several pertinent findings relevant to our discussion today. (Id., Doc. 117). We first observed that because the lists were "meant to have global application in every case rather than be limited to any individual plaintiff's case, and contain[ed] no specificity regarding to what any of these individuals might testify or the contents of any of the transcribed statements", they could not in fact, be truly considered " a supplement to any previous [interrogatory] answers served in the individual cases." (Id., fn. 4) We also observed that the lists

---

[3](...continued)
state the following: (a) the location of the job; (b) the length of time you worked at that job; (c) your superior or foreman living on that job and his last known address; (d) your co-workers on that job, including the persons who worked with you or at the same job site, and their current or last known addresses. Identify any represented by counsel in asbestos claims.

Interrogatory 20 provides: For each product identified in Interrogatory No. 19, identify the following: (a) your coworkers, including persons who worked with you or at the same job site, with knowledge that the product was on the particular job site; (b) your coworkers, including persons who worked with you or at the same job site, with knowledge that you actually worked with the particular product.

Interrogatory 29 provides: State whether you or your attorneys or agents know of the existence of any statements, signed or unsigned, oral, written, or court reported, from or by any person including any person hereto, which has or claims to have knowledge concerning the matter alleged in the complaint, or who was or claims to have been a witness to any part of the exposure alleged by you. If so, please state: (a) whether the statement was written, oral, recorded, reported, reported by shorthand, or otherwise preserved; (b) the full name of the current or last known address of the person or persons, or entity, which took the statements and the date such statement was made; (c) the full name and current or last known address of each person, firm, or entity which has possession of the statement or copies thereof. See e.g. (Doyle, 08-89845, Doc. 162 Ex. M).

did not constitute "responses to any of the standard interrogatory questions submitted in any individual case." (Id.). We further concluded that the lists' "generality and lack of detail [rendered them] incapable of being used by any defendant in any particular case" and we "urg[ed] plaintiffs to be clear-eyed about the listing[s'] deficiencies." (Id.). However, we declined to strike the lists at that stage noting that they did provide "some relevant information" even if "merely associating a job site with a 'site-worker' [would] certainly not [be] sufficient to even begin to establish the causation evidence a plaintiff would need to sustain his case." (Id.).

CVLO continued to expand and serve updated lists upon Defendants. After service of the initial lists on June 12, 2012, they served amended lists on July 13, August 24, September 14, September 24, September 28, October 1, October 12, October 26, and November 9, 2012. See (Id. Doc. Nos. 162 Exs. F-L, 166 Exs. A-B). As of October 1, 2012, the lists had grown to 1,490 pages, with anywhere from approximately five to eighteen unique individuals or transcripts identified on a page. (Id., Doc. 162 Ex K). By any measure, there were in excess of 15,000 persons identified.

The lists are all constructed in a similar fashion to the original lists served on June 12, 2012. However, in an apparent attempt to comply with our July 17, 2012 order and bring necessary specificity to the lists, CVLO added two additional categories of information to the later lists: (1) the "Product, Equipment, or Contractor" about which the listed individual allegedly had some knowledge or to which the testimony referred, and (2) the relevant "Approximate Years" about which the individual or deponent had knowledge. See e.g (Id.). Sometimes these two new categories were populated, sometimes they were not.

On October 23, 2012, Defendants filed this motion seeking the entry of an order barring any individuals identified in all iterations of the lists from testifying at trial or providing

4

affidavits in response to filed or anticipated motions for summary judgment in CVLO 3 cases unless those individuals had otherwise been properly disclosed as witnesses. We consider the question as it relates to the CVLO 3 cases understanding that it will of course have implications upon all other CVLO MDL-875 cases.

## II. DISCUSSION

### A. Unverified Interrogatory Responses

In their initial June 12, 2012 "site worker" and "past testimony" lists, CVLO alleged that they were serving the lists as supplemental responses to standard interrogatories 16-18, 20, and 29. (Doyle, 08-89845, Doc. 162 Ex. B). The October 26 and November 9, 2012 lists, the most recent addressed by this motion, both contain cover letters expressing this same proposition. (Id. Doc. 166 Exs. A-B). The remaining lists attached to Defendants' motion do not have cover letters expressing the purpose of the lists, however, from statements made at the oral argument and from Plaintiffs' brief, we understand that CVLO intended these lists as interrogatory response supplements as well. None of the lists at issue are signed by any Plaintiff as CVLO meant them to be considered globally and as a compilation of literally thousands of individuals who worked at certain job sites at certain times when perhaps some CVLO plaintiff may have been working at the same place and time. They are not represented to be applicable to any particular CVLO case.

As we previously ruled on July 17, 2012, we do not consider these lists to be proper supplemental interrogatory responses. This determination, however, does not change the way CVLO has characterized the responses. Therefore, and to extent that CVLO contends that they are supplemental interrogatory responses, we strike them as unverified. As we have held on several occasions, unverified interrogatory responses are not responses at all and may not be used by the

5

serving party for any purpose. See e.g. Ferguson v. A.C. & S., Inc., 08-90234, 2012 WL 5839023, at *7-9 (E.D. Pa. Nov. 16, 2012); Unzicker v. A.W. Chesterston Co., 11-CV-66288, 2012 WL 1966028, at *2 (E.D. Pa. May 31, 2012). Below, we will also consider the implication of considering these lists as Rule 26 supplements.[4]

## B. The Implications of Our July 17, 2012 Order

As discussed above, we have visited this issue once before and made rulings which inform the outcome of this motion. In footnote four of our July 17, 2012 order we specifically held that because the lists were not served in individual cases and the responses were too general to be used in a specific case, the lists were not supplements to any interrogatory answers which had been served in individual cases. E.g. (Doyle, 08-89845 Doc. 117, fn. 4). We further held that the lack of specificity in the lists rendered them incapable of being used in a particular case. (Id.). It appears that CVLO may be attempting to remedy this problem by amending the lists to include categories for relevant products and time frames. While this information may be somewhat more helpful when provided, the lists, by their global nature, still fail to tie the information provided to an individual plaintiff. Without this connection, the lists, standing alone, would not appear to be of any specific relevance in a particular case.

At best, a Defendant could narrow the lists down to individuals who were at the same job site as a Plaintiff at roughly the same time and who CVLO contends have knowledge regarding a product for which that Defendant is responsible. What a Defendant cannot do with these lists,

---

[4] At the oral argument the parties informed us that CVLO had served an additional set of lists on December 7, 2012. The parties alleged that for the first time, rather than being described as supplements to interrogatories, CVLO described the lists as Rule 26(e) disclosures. We were not provided with a copy of these lists. Presumably CVLO made this change pursuant to our ruling in Ferguson that any interrogatory responses that were not verified by the Plaintiff were invalid. 2012 WL 5839023, at *7-8.

6

however, is discern whether such an individual might have any connection to any particular Plaintiff, thus triggering a need for the Defendant to take his or her deposition. It is the case that the standard interrogatories were served in each case and must accordingly be answered individually in each case. See Fed. R. Civ. P. 33(b)(3) (providing that "[e]ach interrogatory must . . . be answered separately and fully in writing under oath"); see also Judge Reed's October 5, 2010 letter order approving the use of the standard interrogatories, at ¶ 9 (http://www.paed.uscourts.gov/mdl875r.asp, 10/5/2010 entry) (providing that "[e]ach plaintiff shall answer each question with the specificity required by the [Fed. R. Civ. P.] 33"). These individualized answers must be responsive to, *inter alia*, the Defendants' interrogatory question regarding what witnesses, if any, a Plaintiff reasonably believes to be in a position to connect his or her exposure to a particular Defendant's product. Likewise, witness disclosures pursuant to Fed. R. Civ. P. 26 must necessarily relate to a specific case and Plaintiff. Defendants cannot be left to guess who among the 15,000 or so names on the lists have knowledge of a given Plaintiff and his or her exposure to a particular product.[5] We hold once again that the "site worker" and "past testimony" lists, which were not meant by CVLO to apply to individual cases, are not proper interrogatory supplements, 26(e) disclosures, or witness disclosures. The lists' generality and lack of case-specific application "render [them] incapable of being used by any defendant in any particular case." (Doyle, 08-89845 Doc. 117, fn. 4). As a result, the individuals on these lists may only be disclosed as witnesses at trial or in rebuttal to a motion for summary judgment if they have been properly and timely disclosed elsewhere.

---

[5] This plaintiff/defendant nexus information is requested in standard interrogatory 20(b): "For each [asbestos-containing product for which exposure is claimed], identify (b) your coworkers, including persons who worked with you or at the same job site, *with knowledge that you actually worked with the particular product*." (emphasis added).

7

## C. Improper Discovery Responses and the Application of Meyers v. Pennypack Woods Home Ownership Association

The principal thrust of Defendants' motion is that, pursuant to Fed. R. Civ. P. 37, the individuals on these lists should be barred from use in CVLO 3 cases, to the extent they are not properly disclosed elsewhere, given the prejudice associated with: (1) the untimely nature of their disclosure; and (2) the reality that Defendants cannot utilize the lists to determine which individuals are relevant in a given case. Discovery closed for the CVLO 3 cases on July 13, 2012. Thus, all of the lists except for those of June 12 and July 13, 2012 were served after the close of discovery in those cases. Defendants further contend that given the nature and volume of the lists, the June 12 and July 13 lists must also be considered untimely in that they could not be properly considered before discovery ended.

Both parties contend that the question of whether to strike witnesses involves an analysis of the factors enumerated in Meyers v. Pennypack Woods Home Ownership Association, 559 F.2d 894 (3d Cir. 1977), *overruled on other grounds by* Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir. 1985).[6] The Defendants contend that an analysis of the issues in the context of the Meyers factors shows that they would still be entitled to relief given the prejudice which would occur if Plaintiffs could utilize as witnesses the individuals on the "site worker" lists (or the transcripts on the "past testimony" lists) who were disclosed only on those lists and not in any individual cases. We agree with Defendants that when the Meyers factors are considered in the context of these remarkable disclosures, they are entitled to relief.

---

[6] CVLO at times disputes that the lists represent witness disclosures. However, since Defendants' concerns relate to Plaintiffs' potential use of the listed individuals as witnesses, we focus on that issue.

8

In Meyers, the Third Circuit Court of Appeals announced a test for determining whether a trial court abused its discretion by precluding certain untimely disclosed witnesses from testifying. The plaintiff in that case attempted to add these witnesses to his pretrial memorandum a month after the close of discovery and approximately three weeks before the trial began. 559 F.2d at 903-04. When he called two of those witnesses to testify at trial, the defendant objected and contended that it would be prejudiced if the witnesses were permitted to testify since they were untimely disclosed and the defendant did not have an opportunity to depose them. Id. The trial judge sustained the defendant's objections and excluded the witnesses. Id.

On review, the Third Circuit reversed and held that under the circumstances presented, the district court abused its discretion by precluding the witnesses from testifying. In so doing, the Court identified four factors that the district court must consider in deciding whether to accept the evidence or not. They were:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order.

Id. at 904-05. The Court also noted the importance of the excluded evidence in its analysis. Subsequent cases have identified this as a fifth factor. See ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 298 (3d Cir. 2012).

Unlike Myers, the issue before us is not whether a particular identifiable witness could testify, but rather, whether, because of the failure of Plaintiffs to have properly satisfied their discovery obligations by belatedly "disclosing" witnesses through these lists, they should be precluded from offering evidence from any of these witnesses through an affidavit in response to a

9

motion for summary judgment or through testimony offered at trial where the witness has been disclosed only through these lists. We agree with Plaintiffs, that in this context the Myers factors may have applicability. But as in Unzicker and Ferguson, to take on this proposition, we would have to accept Defendants' invitation to assume an event that may not have yet occurred, and may not occur, namely whether affidavits from these individuals will be (or may have already been) offered or whether Plaintiffs will call any of these witnesses at trial. We must also assume that the evidence to be presented relates to causation and would arguably establish a basis to link a particular Plaintiff and a particular Defendant's product.

In Ferguson, we declined to make those assumptions or to strike interrogatory responses in individual cases which were arguably untimely or improperly served. 2012 WL 5839023, at *6. We concluded that Defendants' request was premature and we were unwilling to speculate about how a Plaintiff in a particular case would seek to use that information. At the same time, we recognized Defendants' concern that Plaintiffs might attempt to use declarations from individuals disclosed in the disputed responses to oppose motions for summary judgment. We concluded that the "judge presiding over the case when, and if, a Plaintiff attempts to utilize such a declaration or otherwise rely on such information from an interrogatory response will be in a much better position to engage in the prejudice analysis." Id. That same proposition holds true today and we do not deviate from it. Yet, the relief Defendants seek here is somewhat more limited. Defendants do not ask for the entry of an order that would preclude these witnesses without limitation. Rather, they asked for the entry of an order that makes manifest the simple consequence of Plaintiffs' failure to satisfy the requirement of providing notice that a particular witness would establish causation in a particular case. The lists do not do so and we have no difficulty in

precluding Plaintiffs from using any of these witnesses for that purpose unless any such witness was properly disclosed elsewhere. Importantly, we also observe that discovery is closed in all CVLO MDL-875 cases and Plaintiffs are in fact filing such causation witness declarations with their summary judgment responses.[7] Thus, the context of the disclosures, which we earlier identified as hypothetical, is now being particularized and made concrete.

CVLO argues that they have cured any prejudice by continually updating their lists and by agreeing that Defendants may depose anyone from the lists once CVLO discloses that they will use those individuals as witnesses in a given case. As discussed above, we cannot agree that the updating of the lists to add one or two additional categories makes a real difference. These lists still fail to provide any notice to the Defendants of what individuals would be relevant in a given case. Further, CVLO's argument disregards the discovery process that has been in place and would entail the expenditure of time as well as money by Defendants for the sole purpose of giving Plaintiffs another opportunity to do what they have not done in so many of these cases from the start - produce witnesses who can and will connect a particular Plaintiff with a particular product in a particular case.

We have recently addressed the importance of adhering to the scheduling orders in MDL cases given the need to balance "the individual character of each case . . . and the necessity for efficiency and uniformity in managing the aggregated whole." Ferguson, 2012 WL 5839023, at *1.

---

[7] Judge Robreno, in another MDL-875 case, declined to consider an untimely witness affidavit proffered in response to a motion for summary judgment, pursuant to Fed. R. Civ. P. 37(c). Morgan v. 3M Co., MDL 875, 2011 WL 7573811, at *fn 1 (E.D. Pa. Dec. 22, 2011). The proffering party had disclosed the witness for the first time in a supplemental interrogatory response served nearly three months after the close of discovery. Id. Judge Robreno based his decision on the fact that the proffering party had failed to justify their failure to disclose the witness in accordance with the time line set forth in the scheduling order. Id.

11

"'The district court needs to have broad discretion to administer the [MDL] proceeding as a whole, which necessarily includes keeping the parts in line. Case management orders are the engine that drives disposition on the merits.'" Id. *quoting* (In re Asbestos Prods. Liab. Litig. (No. VI), 278 F.R.D. 126, 129 (E.D. Pa. 2011)). "Certain levels of leniency and flexibility regarding discovery and scheduling matters, which would be acceptable in individual cases, can have the capacity to unhinge, or at the very least severely delay, a group of cases tied together in an MDL." Id. The repercussions of re-opening discovery so that the parties could depose a large number of individuals, either at once or in a piecemeal fashion, clearly illustrate this concept.

We note and consider it significant that the Third Circuit in Meyers was not faced with the additional burdens to which both the court and the parties are subjected in an MDL. As discussed above and in Ferguson, 2012 WL 5839023, MDL cases require the parties and the court to adhere to scheduling orders and discovery requirements as the impact of these obligations goes well beyond the management of a single case. In Meyers, the Court was faced with the prospect of excluding specifically identified witnesses. Here the Defendants and the Court are faced with the prospect of dealing with an unknown number of witnesses out of the some 15,000 identified in the lists. Finally, unlike in Meyers, we are not barring witnesses from testifying. We are merely holding that the introduction of a witness as a name on a list and little more simply does not constitute adequate disclosure for the witnesses to be presented at trial – or as an affiant in a response to a motion for summary judgment. At the same time, any individual identified on the lists may be utilized by a Plaintiff to help demonstrate causation, or for any other proper purpose, assuming that they have been properly and timely disclosed in a particular case.

## III. CONCLUSION

CVLO's "site worker" and "past testimony" lists are not interrogatory responses, Rule 26(e) disclosures, or witness disclosures applicable to any individual case. Plaintiffs are barred from offering evidence by affidavit in response to a motion for summary judgment or at trial, unless they were properly disclosed elsewhere during discovery.

An appropriate Order follows.

13